IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MIMI OKAZAKI,

       Plaintiff,

v.                                 CASE NO. 4:07-cv-496-SPM

DEPARTMENT OF CHILDREN AND
FAMILIES, STATE OF FLORIDA,

       Defendant.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the motion for summary judgment (doc. 25) filed by Defendant Department of Children and Families, State of Florida ("DCF"). In the motion, DCF argues that it is entitled to judgment as a matter of law because Plaintiff Mimi Okazaki cannot state a prima facie case to support a claim of gender discrimination under Title VII or a violation of the Equal Pay Act, nor can she rebut DCF's legitimate, non-discriminatory reasons for its actions toward her.

In her response to the motion, Okazaki fails to show there are genuine issues of material fact from which a jury may find in her favor on the claims. Accordingly, DCF's motion for summary judgment will be granted.

## I.  Legal Standard

"On summary judgment the inferences to be drawn from the underlying

facts . . .  must be viewed in the light most favorable to the party opposing the

motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  A motion for

summary judgment should be granted when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  When a motion for summary judgment is

properly made and supported, the non-movant must come forward with specific

facts showing that there is a genuine issue for trial that precludes summary

judgment.  Fed. R. Civ. P. 56(e)(2); See Matsushita Elec. Indus. Co. Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The evidence presented cannot

consist of conclusory allegations, legal conclusions, or evidence which would be

inadmissible at trial.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586; see

also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("a mere scintilla

of evidence supporting a position will not suffice; there must be enough of a

showing that the jury could reasonably find for the [non-movant].").  Summary

judgment is improper "[i]f a reasonable fact finder could draw more than one

inference from the facts, and that inference creates a genuine issue of material

fact." Cornelius v. Highland Lake, 880 F.2d 348, 351 (11th Cir. 1989).  But if the evidence fails to "present[ ] a sufficient disagreement to require submission to a jury and is so one-sided that one party must prevail as a matter of law" summary judgment must be granted.  Anderson 477 U.S. at 251.

## A.  Disparate Treatment based on Gender

Plaintiff's alleges that she was a victim of disparate treatment under Title VII because she was paid lower wages than male employees holding the same position.  Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  It is always the plaintiff's burden in a Title VII disparate treatment action to demonstrate proof of discriminatory intent, see Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 529 (11th Cir. 1983); Young v. General Foods Corp., 840 F. 2d 825 (11th Cir. 1988), and to do so, the plaintiff bears the initial burden of proving a prima facie case of discrimination.  Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination.  See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  The initial burden may be satisfied in one of two ways: 1) by presenting direct evidence of discriminatory intent, see Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989), or 2) by presenting circumstantial

evidence of discriminatory intent.  See Wilson v. B/E Aerospace, Inc.,376 F.3d
1079, 1087 (11th Cir. 2004).  In cases based on circumstantial evidence, the
McDonnell Douglas[1] test can be useful but care should be taken to focus on
whether the evidence creates an inference of discrimination and to avoid "rigid,
mechanized, or ritualistic" application.  Furnco Constr. Corp. v. Waters, 438 U.S.
567, 577 (1978).

Under the McDonnell Douglas test, a plaintiff can establish a prima facie
case of discrimination by showing: 1) she is a member of a protected class; 2)
she was subject to adverse employment action; 3) her employer treated similarly
situated employees who are not members of the plaintiff's class more favorably;
4) she was qualified for the job or job benefit at issue.  After the plaintiff proves a
prima facie case, the burden of production then shifts to the defendant to
articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory
action.  Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1528 (11th Cir.
1992).  At this point, the Title VII defendant does not have the burden of
persuasion; it "need not persuade the court that it was actually motivated by the
proffered reasons. It is sufficient if the defendant's evidence raises a genuine
issue of fact as to whether it discriminated against the plaintiff."  Plemer v.
Parsons-Gilbane, 713 F.2d 1127, 1136 (11th Cir. 1983).  If the defendant carries
this burden, the plaintiff then bears the ultimate burden of persuading the court

---

[1]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.  Id.  Thus, in a Title VII case, the burden of persuasion always remains with the plaintiff.

## B.  Violation of Equal Pay Act

Plaintiff also alleges that Defendant violated the Equal Pay Act.  Unlike a disparate treatment case under Title VII, in an action pursuant to the Equal Pay Act, the plaintiff does not need to prove discriminatory intent.  To establish a prima facie case under the Equal Pay Act, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. S 206(d)(1)). The jobs held by employees of the opposite sexes need not be identical; rather, they need only be substantially equal.  Corning, 417 U.S. at 203-04.  The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.  Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989).  Although job titles are entitled to some weight, the controlling factor under the Equal Pay Act is job content: the actual duties that the employees are to perform.  Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1049 (5th Cir. 1973).  Once a plaintiff makes out a prima facie case, the

burden of proof shifts to the employer to prove the pay difference is justified by one of the four exceptions in the Equal Pay Act: "(i) seniority; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." Corning, 417 U.S. at 196. A defendant must show that the factor of sex provided no part of the basis for the wage differential. Brock v. Georgia Southwestern College, 765 F.2d 1026, 1036 (11th Cir. 1985); 29 U.S.C. § 800.142. Thus, unlike a Title VII action, if the plaintiff establishes a prima facie case, then the burden of proof and production shifts to the employer and the exceptions are affirmative defenses of which the employer bears the burden of proof. Plemer, 713 F.2d at 1136.

## II.  Background[2]

Plaintiff is currently employed as a Senior Psychologist Forensic Correctional Designation ("Senior Psychologist F/C") by Defendant at Florida State Hospital ("FSH"). This is a position for psychologists who practice in the forensic and correctional field. Plaintiff is still employed in this capacity by Defendant. Plaintiff alleges she "has been paid less than similarly situated males holding the same or a similar position to that held by Plaintiff." Doc. 1, ¶ 7. Plaintiff asserts a claim of sex discrimination under Title VII and a violation of the Equal Pay Act.

Plaintiff began working for DCF in a Psychological Specialist position as a

---

[2]The facts are presented in the light most favorable to Plaintiff, with all reasonable inferences drawn in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

psychology intern at FSH in September 1995.  She completed her internship in August of 1996.  In September 1996, she was hired as a full-time Psychologist at FSH, Unit 28.  She received her license to practice psychology in the State of Florida in December 1997.  After she received her license, her position was changed to Senior Psychologist.  In August 1998, she transferred to Unit 21 and her position title was changed to Senior Psychologist F/C.

Plaintiff initially became aware of the alleged pay discrimination when Plaintiff was shown a graph illustrating that women were paid less than their male counterparts with the same job titles and job descriptions.  Doc. 39 ex. 3.  Plaintiff received this graph from Dr. Anthony McCoy by facsimile on September 20, 2006.  Dr. McCoy received the graph from Dr. Lynne Westby.  The graph was created by Dr. Tammy Lander in 2006, who was an intern at the time.  The graph was reviewed by Dr. Ellen Resch, the training director at the time.  Dr. Lander created the graph to show the discrepancy in pay between interns and full time staff members.  After discussing the graph with Dr. Westby, Plaintiff believed that, based on markings on the graph by Dr. Resch, the graph illustrated gender discrimination in terms of pay.  Thereafter, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission in October of 2006.

Although Plaintiff does not raise a retaliation claim, Plaintiff alleges that on March 22, 2007, the staff did not, upon her request, hold open the telephone lines for her to conduct scheduled telephonic testimony.  Plaintiff also alleges on March 28, 2007, Plaintiff was summoned by Forensic Administrator, Mrs. Anne

Jackson, to appear in front of an FSH hospital panel to work with a team in discharging a forensic resident, although Plaintiff repeatedly expressed her opposition to this discharge.  As a result of her refusal, Plaintiff lost her position as Unit 21 Coordinator.  Further, Plaintiff alleges from April 23, 2007 to May 21, 2007, she encountered obstacles in accepting a part-time position with DCF's Sexually Violent Predator Program, and as a result, lost part-time pay that she was promised.

Plaintiff also alleges that minutes from the Psychology Clinical Staff Committee on July 3, 2007 state that FSH submitted a proposal to adjust starting salaries for Psychologists and Senior Psychologists and to adjust some disparities in long term salary levels.  Plaintiff also presents evidence that after her complaint was filed, there were numerous transfers of both male and female employees to different units with an accompanying promotion, and several female employees were given increases in base rate of pay as they sought employment offers outside of FSH.

On January 5, 2001, a few years prior to Plaintiff's complaint, Plaintiff attempted to receive an increase in pay based on her certification by the International College of Professional Psychologists ("ICPP"), Forensic Division. Although her contract provides for up to two levels of pay increase for obtaining certification, Dr. Lawrence Annis recommended that the pay increase be denied because he believed the certification was not equivalent to the certification required by the American Board of Professional Psychology ("ABPP").  On July

10, 2001, Jane Wynn, Forensic Administrator, wrote a memo to Plaintiff denying

the pay increase.  Plaintiff again submitted a petition for pay increase based on

her certification on January 25, 2009, and she was again denied a pay increase.

## III.  Analysis

For her Title VII claim, Plaintiff has not provided any direct evidence of

discrimination.   Direct evidence is "evidence, that, if believed, proves [the]

existence of [a] fact without inference or presumption."  Burrell v. Bd. of Trs. of

Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997).  "[O]nly the most blatant

remarks, whose intent could mean nothing other than to discriminate" constitute

direct evidence of discrimination.  Rojas v. Florida, 285 F.3d 1339, 1342 n. 2

(11th Cir. 2002) (quoting Schoenfeld v. Babbitt, 168 F.3d 1257,1266 (11th Cir.

1999)) (citations and quotations omitted); see Carter v. City of Miami, 870 F.2d

578, 582 (11th Cir.1989). If the alleged statement suggests, but does not prove,

a discriminatory motive, then it is circumstantial evidence.  Burrell, 125 F.3d at

1393.

Thus, the first inquiry is whether Plaintiff has established an issue of

material fact by providing circumstantial evidence of discrimination.  Plaintiff

relies on the factors set forth in the McDonnell Douglas test to evaluate

circumstantial evidence of discrimination.  Plaintiff alleges she is a female, she

was paid less than male employees, her employer treated similarly situated male

employees more favorably in terms of salary, and she was qualified for the job.  It

is not disputed that Plaintiff is a member of a protected class.

Plaintiff alleges that she was not offered a pay increase after she received ICPP certification.  Assuming that this claim is not time barred, Plaintiff still failed to allege that males with similar certifications were given a pay increase.  In fact, Defendant points to female employees who received the requisite ABAA certification and were given the pay increases.  Plaintiff also alleges that after she filed her complaint, she was subject to retaliation.  However, Plaintiff did not raise a claim for retaliation and Plaintiff has failed to establish that the instances discussed *infra* were anything other than day-to-day work related issues.  An employee's decision to oppose an unlawful employment practice does not "immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff also relies on the fact that Defendant's decisions on salary, although predetermined, are "not set in stone," and allow some "wiggle room" for the unit coordinators to exercise discretion based on other variables. (Deposition of Nancy Jarmon).  However, the Eleventh Circuit has held that "an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag.  Certainly nothing in our precedent established that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).  Plaintiff also alleges that after her complaint was filed, proposals were circulated to improve psychologists' salary structure for

retention and recruitment purposes.  Nonetheless, assuming such evidence is admissible, it fails to demonstrate in any manner that Plaintiff was treated differently than male employees.

Plaintiff also relies on statistics to establish circumstantial evidence of discrimination consisting solely of  Dr. Lander's graph discussed *infra*.  Plaintiff alleges that the graph depicting the mean salary for females as compared to males, in year 2006, demonstrates that females were discriminated against because, on average, female employees with the same title as male employees earned less than male employees.  The producer of the graph, Dr. Lander, who was at the time an intern at FSH, expressed that the numbers used to create the graph were taken from FSH's internet site.  (Deposition of Tammy Lander). Those numbers indicated the date of hire, the unit, and the salary for doctors employed at FSH.  Afterward, Dr. Lander took a list from the psychology phone book to match up the numbers with the respective doctors.  Then, Dr. Lander confirmed the numbers and gender of the respective doctors with Dr. Resch.  Dr. Resch, upon glancing at the data, noticed a gap in the gender and subsequently drew a "sad face" on the graph.  Dr. Lander admits that the purpose of producing the graph was to increase salaries for newly hired interns.  Dr. Lander also admits that the graph does not indicate the number of years of experience outside FSH for each respective employee.  Dr. Lander states, "I wouldn't have known what their careers looked like.  All I knew was what the total years of service was indicated on the data that I pulled off of the Internet."  (Depo. pg 24,

lines 22-25).  Dr. Lander further admits that she was not privy to the hiring

practices or experience level of anyone represented in the graph.   Accordingly,

the statistical evidence presented does not have any probative value in

establishing a prima facie case of disparate treatment.  "Statistics without any

analytical foundation are 'virtually meaningless.'" Evans v. McClain of Ga., Inc.,

131 F.3d 957, 963 (11th Cir.1997) (quoting Brown v. Am. Honda Motor Co., 939

F.2d 946, 952-53 (11th Cir. 1991)).  The reliability of the data is highly

speculative.  "The graph does not names any persons whose salary is depicted

on the graph, or the source of the data depicted, or even the year or general time

frame for the graph.  Plaintiff does not have the underlying information or data

used to create the graph." (Defendant's Motion pg 7; see also Defendant's

Motion ex. E).  In order to be admissible, statistics must be "supported by

appropriate validation-i.e., 'good grounds,' based on what is known." Perez v.

Pavex Corp., 510 F.Supp.2d 755, 760 (M.D. Fla. 2007).

 Even if Plaintiff established a prima facie case, Defendant presents

numerous non-discriminatory reasons for any alleged salary differential, such as

years of experience and competing job offers.  Plaintiff did not meet her burden

of rebutting Defendant's legitimate non-discriminatory reasons for the salary

differentials because Plaintiff ultimately relies on the same graph, of which the

statistics are not reliable and the graph does not account for Defendant's

legitimate non-discriminatory reasons.  "Pretext can be established by evidence

which "cast[s] *sufficient doubt* on the defendant's proffered nondiscriminatory

reasons . . . ." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (emphasis added) (citation and quotations omitted).  "A plaintiff may not establish [pretext] merely by questioning the wisdom of the employer's reason. Instead, the plaintiff must "meet [the employer's reason ] head on and rebut it." <u>Osahar v. Postmaster General of U.S. Postal Service</u>, 263 Fed.Appx. 753, 762, 2008 WL 123959, *8 (11th Cir. 2008).

Defendant provides a chart showing that years of experience, along with other non-discriminatory variables, is determinative of salary differentials (Defendant's Motion Pg 4).  Defendant's chart, which is supported by accompanying affidavits, demonstrates that a male employee with less experience than Plaintiff earned less than Plaintiff, while a male employee with slightly more years of experience than Plaintiff earned only slightly more than Plaintiff.  To rebut this presumption, Plaintiff alleges that she has certification unlike other male employees, and was again refused a pay increase based on this certification in 2008.  Plaintiff states that ICPP is now recognized by the Department of Health as equivalent to ABPP, and thus, Defendant should recognize her certification and grant her a pay increase.  However, Plaintiff has not established that the requirements to obtain the certification is as demanding as those for ABPP certification, which is why Plaintiff was initially denied the pay increase.  Furthermore, Plaintiff has not presented any evidence showing that Plaintiff was unfavorably treated in comparison to male employees because Plaintiff has not shown any male employees who received pay increases based

on an ICPP  certification.  Plaintiff also alleges that two male employees were not represented on Defendant's chart.  Defendant submitted affidavits from both of these male employees.  One of the male employees, Dr. Robert Chitwood, earns more than Plaintiff because he has seven more years of post-doctoral experience than Plaintiff (Dr. Robert Chitwood's Affidavit); the other male employee, Dr. Stephen Kopetskie, although he has the same years of experience, earns approximately two hundred dollars more than Plaintiff biweekly.  However, Dr. Kopetskie held a multitude of positions outside of FSH and recently joined FSH (Dr. Kopetskie's Affidavit).  Additionally, the salary differential is not entirely clear because Plaintiff compared her salary as of the end of 2006 with Dr. Kopetskie's salary as of the end of 2007.  Finally, Plaintiff relies on deposition testimony whereby the first time Dr. Annis was presented with the graph in question, he told Dr. Lander to destroy the graph and data and to be careful about what was said because of the strong accusations.  Dr. Annis did not report the graph to any of his supervisors at that time.  Dr. Annis' statements were made during a cursory review of the graph, and Dr. Annis did not do his own investigation into the accuracy of the data relied upon.  Additionally, Dr. Annis is not the final arbiter of salaries at DCF.  Given the context of these comments, they do not act to rebut DCF's proffered reasons 'head on." Osahar, 263 Fed.Appx. at 762.

The next inquiry is whether Plaintiff has established an issue of material fact to withstand summary judgment on her Equal Pay Act claims.  For the same aforementioned reasons, Plaintiff has failed to show that her employer pays

different wages to employees of opposite sexes.  Plaintiff again relies on the graph for which the numbers are unsubstantiated.  Even if the numbers accurately reflected salaries, more information is needed to ascertain whether the male employees depicted on the graph are substantially equal comparators to Plaintiff.   Moreover, Defendant has presented evidence of male comparators whose wages are similar to or less than Plaintiff's wages.

Even assuming the evidence presented is enough to conclude Plaintiff established a prima facie case, Defendant has met its burden of establishing that the salary differentials are based on years of experience and factors other than sex.  Defendant has shown that Plaintiff's salary compared to males employed at DCF is consistent with their years of experience.  Many of those with higher salaries were in the position of Senior Psychologist F/C before Plaintiff.  Others had more experience and were hired at an advanced appointment rate that took experience into account.   These are gender-neutral factors and legitimate business reasons for the salary differential.  Irby v. Bittick, 44 F3d 1949, 1955-56 (11th Cir. 1995).

Plaintiff cites to the salary of Dr. Lynn Westby as evidence that length of service with DCF was not a factor affecting salary.  Defendant acknowledged, however, that experience was not the sole factor.  Market conditions at the time of each person's employment, current salary, and need to fill vacant positions were also factors.  In any event, Plaintiff's salary falls in line with the male comparators when experience is taken into account.  Plaintiff herself is not an

CASE NO. 4:07-cv-496-SPM

outlier.  There is no genuine issue as to the reason for Plaintiff's pay differential.

Defendant has demonstrated that gender did not play a role.

Plaintiff has failed to rebut Defendant's reasons with affirmative evidence.

She claims that "there is no stronger evidence [of rebuttal] than the actions that

followed the development of the graph and against Plaintiff for filing the EEOC

complaint."  Doc. 40 at 24.  But Dr. Annis, who warned Dr. Lander to be careful

with the graph, did not set Plaintiff's salary.  His statement is therefore not

probative of the issue.  Steger v, Feneral Elctr. Co., 318 F.3d 1066, 1079 (11th

Cir. 2003) (comment by nondecisionmaker not relevant to plaintiff's Equal Pay

Act claim).  Plaintiff also relies on the alleged acts of retaliation, but those acts

amount to no more than ordinary workplace tribulations and they do not address

Plaintiff's salary.

## IV.  Conclusion

Plaintiff relies primarily on a graph to establish her claims under Title VII

and the Equal Pay Act.  The graph does not name any persons whose salary is

depicted on the graph, or the source of the data depicted, or even the year or

general time frame for the graph.  Plaintiff does not have the underlying

information or data used to create the graph.  Plaintiff has not established a

prima facie case based on the graph and the other evidence she has presented.

Moreover, Defendant has demonstrated that Plaintiff's pay and the pay of her

male comparators was based on their relative levels of experience and other

factors unrelated to sex.  There is no genuine issue about the reason for the pay

differential.  Accordingly, it is

        ORDERED AND ADJUDGED:

        1.      Defendant's motion for summary judgment (doc. 25) is granted.

The clerk shall enter judgment in favor of Defendant and against Plaintiff.

        2.      The pretrial conference set for 1:30 p.m. on October 6, 2008, is

cancelled.

        DONE AND ORDERED this 3rd day of October, 2008.

                *s/ Stephan P. Mickle*

                Stephan P. Mickle
                United States District Judge